UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JO A. PRESTON,

    Plaintiff,

v.

THE CITY OF NORTH LAS VEGAS, et al.,

    Defendants.

2:03-cv-1165-LDG-PAL

**ORDER**

    Defendants have filed a motion for summary judgment on plaintiff Jo A. Preston's second amended complaint (#141, opposition #143, reply #144). Preston's complaint alleges job discrimination based on hostile environment, gender, race, disability and age, and claims for retaliation, negligent infliction of emotional distress, and negligent hiring and supervision.

    Under Rule 56( c) of the Federal Rules of Civil Procedure, summary judgment is only proper where the pleadings, discovery, and affidavits show that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c). There is no issue of material fact when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Once the moving party meets its initial burden, the nonmoving party must "go beyond the pleadings, and, by its own affidavits or by depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists. Hughes v. United States, 953 F.2d 531, 541-42 (9th Cir. 1992); Fed.R.Civ.P. 56(e). However, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . .".

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  Therefore, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id.

I.      Pre-March 9, 2002, Discrimination

National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), forecloses application of the continuing-violation doctrine to discrete discriminatory acts perpetrated more than 300 days prior to the charges filed with the state entity with authority to grant or seek relief with respect to the alleged act.  Here, Preston's claims of discrete acts of promotion discrimination occurring more than 300 days before she filed her complaint with the Nevada Equal Rights Commission are time-barred.  However, Preston would not be precluded from using the prior acts as background evidence in support of a timely claim.  Id. at 113.

II.     Claims Related to NERC Complaint

Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are "like or reasonably related to the allegations contained in the EEOC charge."  Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quoting Oubichon v. Northern Am. Rockwell Corp., 482 F.2d 569, 571 (9th Cir. 1973)).  In determining whether an allegation is like or reasonably related to allegations contained in a previous EEOC charge, the court inquires whether the original EEOC investigation would have encompassed the additional charges.  883 F.2d at 1476.  Finally, the court is required to construe the EEOC charges liberally.  Id.

In her first NERC complaint, Preston identified discrimination based on race, sex, age and disability, and alleged hostile work environment in the form of comments and jokes regarding her disability, and the September 19 memorandum.  In her second NERC complaint, Preston identified discrimination based on race, retaliation, age and disability, in particular related to her being "written up for various infractions," and denied promotional opportunities.  Defendants argue that Preston's charges did not include her claims involving failure to accommodate her disability.  In opposition, Preston argues that she requested a reasonable accommodation for her disability by

requesting the officers in the September 18, 2002, crime-prevention presentation to quiet down so she could hear.

The court does not agree that the "quiet down" incident serves as a request to her employer for an accommodation for her hearing disability; rather, the court understands this argument as Preston's attempt to tie her accommodation claims to instances of discrimination that she identified to the NERC. The question, therefore, is not whether the "quiet-down" incident served as Preston's request for accommodation,[1] but whether Preston's failure-to-accommodate claims are reasonably related to her discrimination and harassment claims made to NERC. Reading the NERC charges liberally, the court determines that they are. Preston's claims of failure-to-accommodate would likely have been encompassed in an investigation of the NERC charges, based on Preston's claims that she was "written up for various infractions," which included alleged discipline for her failure to respond to phone messages during the pendency of her request for a hearing-impaired phone.

III.    Accommodation under the American with Disabilities Act

Defendants argue that even if the court has jurisdiction to consider Preston's ADA claim for failure to reasonably accommodate her disability, Preston has not established that (1) she is disabled within the meaning of the ADA, (2) she requested an accommodation that the City did not provide, and (3) any lack of accommodation affected the terms, conditions, or privileges of her employment.

Preston alleges that after brain surgery in 1995, she was left completely deaf in one ear, and has a hearing loss of 30% in the other. However, "[m]erely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment substantially limits a major life activity." Toyota Motor Mfg., Kentucky, Inc., v. Williams, 534 U.S. 184, 195 (2002). Preston claims that the major life activity that is limited is "work and

---

[1] Indeed, the record is clear that Preston made specific requests for accommodations in the form of a hearing-impaired phone.

interpersonal communications." However, assuming that these two categories qualify as major life activities, Preston has not established that the limits on those major life activities are not mitigated by the corrective measures available to her. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-83 (1999) (corrective measures must be considered in determining whether an individual is disabled under the ADA).

Defendants point out that, while Preston suffers some hearing loss, she has available to her a hearing-assisted device and uses it only occasionally, choosing instead to function in spite of her hearing loss or read lips if possible. In opposition to this argument, Preston asserts that "having to read lips and close off her peripheral vision limits Ms. Preston's ability to excel in interpersonal relationships without reasonable accommodation." Of course, "excelling" in a major life activity is not the standard for determining a disability under the ADA, and Preston points to nothing in the record to show the impact of lip-reading or limited peripheral vision on her work or interpersonal relationships, much less to what extent such impacts could have been mitigated by the corrective measures available to her. There is no dispute that Preston has a hearing impairment which has impacted her communication and work. But that showing is insufficient to establish that one of Preston's major life activities is substantially limited, especially since Preston chose not to take full advantage of the hearing-assisted devices available to her.

Preston also comments that her ability to speak in public is limited, but has provided no evidence to show that such a limitation is substantial to a major life activity. Finally, Preston does not establish how her hearing impairment affected her ability to communicate by telephone at work, even before she was provided by defendants with the hearing-impaired phone. In other words, Preston has not established that she was significantly limited in her ability to converse on the phone or retrieve phone messages with the hearing-assisted device, or by placing the receiver to the ear in which she retains 70% hearing. Rather, Preston's affidavit indicates that while using the telephone system she "needed additional time to retrieve messages and return telephone calls." While the need to take extra time was the reason that Preston gave for having been reprimanded

for not having returned phone messages, it does not amount to a showing of a substantial limitation on a major life activity. Therefore, Preston has not raised an issue of fact that she is disabled for purposes of the ADA, and defendants are entitled to summary judgment on that claim.

IV.     Hostile Work Environment

Defendants argue in their motion for summary judgment that the incidents alleged by Preston as constituting a hostile work environment either had nothing to do with her race, gender, age or disability, or were isolated and not offensive enough to rise to the level of creating a hostile environment. In her opposition, Preston argues that she was subject to a hostile work environment based on the September 19, 2002 memorandum, a punctured tire, reprimands for failing to acknowledge her superiors, her employer's delay in supplying her with a hearing-impaired telephone, and work evaluations rating her performance at "meets standards." To prevail on her hostile workplace claim, Preston must show that the offending conduct or condition was premised on racial, gender, age or disability discrimination. See Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998) (per curiam). Preston has not sustained her burden.

The September 19, 2002 memorandum was signed by thirty-five police department personnel, and is a criticism of the way Preston conducted a crime prevention presentation on September 18, 2002. The memorandum asserts that during the presentation Preston claimed that when walking a sidewalk occupied by teens, "you" should claim the middle, show confidence, look the teens in the eye, and by thus challenging the teens, they would move out of the way. According to the memorandum, several officers verbally disagreed, and made comments like "that'll get you shot around here." The memorandum also related that Preston told the group that she instructed youth in the DARE program to "say no" to police officers "if it doesn't feel right to them." The memorandum expressed the signators' belief that Preston "hasn't a clue" about the real world, and expressly criticized Preston for her lack of professionalism and the way that she handled the presentation. At one point, the memorandum stated that Preston left the subject of sidewalk safety to comment on the fact that "just because she doesn't talk funny, doesn't mean that

5

she isn't hearing impaired.  She felt it necessary to give an audible example of what she thinks it sounds like when deaf people talk.  This came across badly."

There is no indication in the memorandum, and Preston has not provided other evidence, indicating that the memorandum had anything to do with Preston's race, gender, age or disability. Preston's unsupported assertion in her affidavit that it was "founded on discrimination" is insufficient to support a claim of hostile work environment.  The memorandum criticizes Preston for the content of the presentation and her handling of the officer's disagreements with her.  See Gregory, 153 F3d. at 1074-75 (memo did not criticize based on race or sex and could not support claim of discrimination).  Even the portion of the memorandum related to Preston's discussion of the speech of the hearing impaired was, if anything, critical of Preston's mimicking of such speech, rather than of a disability of Preston's.

Preston presents no evidence regarding who punctured her tire, or whether the act was race, gender, age or disability based.  The reprimands and employee evaluations are discrete acts, and would not support a claim of hostile work environment.  See Porter v. California Dept. Of Corrections, 419 F.3d 885, 893 (9th Cir. 2005) (refusing to mix alleged discrete acts of discrimination with other claims of harassment to support claim of hostile environment). Preston's claim that being temporarily without a hearing-impaired phone created a hostile environment is without support.  Preston presents no evidence that any delay was race, gender, age or disability based.

V.      Retaliation

To make out a prima facie case of retaliation, Preston must establish (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).  In relation to whether Preston experienced an adverse employment action, she requests that she be allowed to review Ms. Hill's salary history pursuant to Fed.R.Civ.P. 56(f).  Although Preston does not explain fully what she expects to gain from such an inquiry, out of an abundance of caution, the court will deny summary

judgment on her retaliation claim without prejudice, so that she can proceed with that further discovery.

VI.   Remaining Claims

Nothing in the record indicates that defendants committed the sort of extreme or outrageous conduct that is required for a claim of negligent infliction of emotional distress. See Chowdhry v. NLVH, Inc., 109 Nev. 478, 851 P.2d 459, 462 (1993). Nor has plaintiff offered evidence to support her claim of negligent hiring or supervision. The court will grant summary judgment as to these claims. Accordingly,

THE COURT HEREBY ORDERS that the defendants' motion for summary judgment on plaintiff Jo A. Preston's second amended complaint (#141) is DENIED without prejudice as to her retaliation claim, and GRANTED as to all other claims.

THE COURT FURTHER ORDERS that Preston be allowed to review Ms. Hill's salary records under conditions agreeable to the parties.

DATED this  30  day of March, 2007.

_____
Lloyd D. George
United States District Judge